# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| RODERICK SLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:24-CV-00448-DGK |
| | ) |
| | ) |
| DOUGLAS COLLINS, SECRETARY | ) |
| UNITED STATES DEPARTMENT OF | ) |
| VETRANS AFFAIRS, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S REPLY IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT

Defendant Douglas Collins, Secretary of the United States Department of Veterans Affairs, pursuant to Fed. R. Civ. P. 56, submits the following Reply in support of its Motion for Summary Judgment and reiterates its request that the Court grant summary judgment in favor of Defendant on all claims alleged by Plaintiff Roderick Sly in his Complaint. ECF No 1.

**I.   Statement of Undisputed Facts**

Defendant submits the following Replies to Plaintiff's Responses where Plaintiff contends that facts are controverted. Uncontroverted statements of fact are not further addressed here. As set forth below, Plaintiff fails to identify any actual controversy as to any material fact.

6. Prior to Sly's promotion, members of the EMS Service Line alleged a hostile work environment against the EMS supervisors. *See* **Exhibit 5**- Fact Finding Report into Allegations of Hostile Environment Workplace Complaint at VA_000310.

**Plaintiff's Response:** Uncontroverted that the EMS service line alleged a hostile work environment. Controverted that VA000310 is a Fact Finding Report.

**Defendant's Reply**: Plaintiff does not controvert SOF 6. Plaintiff does not contest that members of the EMS Service Line made a hostile work environment complaint at VA_000310 and that Exhibit 5 contains the Fact Finding Report into said complaint. SOF 6 is uncontroverted.

9. The Fact-Finding Report found insufficient evidence in support of the hostile work environment claims in the EMS service line. *See* Exhibit 5 at VA_000281-000285.

**Plaintiff's Response:** Controverted as misleading in that multiple reports of harassment, hostile work environment and whistleblowing occurred; the fact-finding results did not address those other complaints.

The Fact-Finding report centered on a narrow set of facts as set forth in the Workplace Harassment report found in Defendant's Exhibit 5. The fact-finding did conclude there was insufficient evidence to establish harassment under that Workplace Harassment report, although it did make findings that third shift employees believed that they bore an unfair workload, among other findings. [D's Ex. 5 at VA_000282]. However, this complaint was not the only complaint that Sly made. He also complained directly to Paula Roychauduri, sent letters and filed whistleblower complaints about supervisors including Christopher Miller, Denise Spivey, Dominic Henderson and Jeremy Brown. [Ex. 1, ROI 048- 049].

**Defendant's Reply**: Plaintiff's response does not controvert SOF 9 but is ancillary commentary and contains irrelevant allegations that are not the subject of this matter. SOF 9 is uncontroverted as the Fact Finding Report found insufficient evidence to support the hostile work environment claims considered.

11. On December 16, 2022, during Sly's probationary period, Brown issued Sly a Written Counseling for failing to follow instructions. *See* **Exhibit 6**- Written Counseling.

**Plaintiff's Response:** Uncontroverted that the letter was written; controverted that Plaintiff failed to follow instructions. [Ex. 1, ROI 086-087]. Plaintiff further controverts that the Written Counseling was disciplinary in nature. The letter itself explains that it was not disciplinary. [Ex. 1, ROI 086-087].

**Defendant's Reply**: Plaintiff does not controvert SOF 11. SOF 11 does not state that the Written Counseling was disciplinary in nature. Further, Plaintiff cites no evidence to show Plaintiff did in fact follow instructions, rather the Written Counseling was explicitly issued due to Sly's failure to follow instructions as indicated in the subject line of the letter. SOF 11 is thus uncontroverted.

12. On June 2, 2023, Sly unsuccessfully completed his probationary period and was demoted from his supervisory position. *See* **Exhibit 7**- Demotion Letter.

**Plaintiff's Response:** Controverted that Sly was unsuccessful in his probationary period. See Plaintiff's Statement of Additional Facts [PSOF ]. Uncontroverted that he was demoted.

**Defendant's Reply**: Plaintiff cites no evidence that Sly successfully completed his probationary period and presents no evidence controverting the demotion letter's substance. SOF 12 is thus uncontroverted.

16. As outlined in the demotion letter, Sly's demotion resulted from his inability to follow instructions in a timely manner. *See* Exhibit 7.

**Plaintiff's Response:** Controverted. The only specifications in the letter regarding timeliness were specifications 1, 4 and 5. Specification 1 dealt with the timeliness of uploading ePerformance evaluations. As set out in Mr. Sly's response to that specification, other supervisors were also tardy without suffering any consequences as they had not been trained in the new performance appraisal software. [Ex. 1, ROI 166]. Specification 4 dealt with having employees sign a code of conduct. That job duty fell on Mr. Mott and Mr. Summers, not Mr. Sly. [Ex. 1, ROI 167]. Specification 5 discussed the Walsh Inspections and that on four occasions he did not make the required number of inspections. Sly admits that occurred but that no other supervisor made their Walsh inspections every week; and, that several of his locations were not on the Walsh Reporting system making the reporting of those locations through that system impossible. [Ex. 1, ROI 167].

**Defendant's Reply**: Plaintiff's response is non-responsive to SOF 16. Plaintiff provides no evidence that the reasons outlined in the demotion letter are not the result of his inability to follow instructions in a timely manner. Moreover, Plaintiff admits that at least three of the performance deficiencies related to his "timeliness." Because Plaintiff's response is ancillary commentary, only supported by his own self-serving allegations, SOF 16 is uncontroverted.

17. The demotion letter cited five independent events constituting conduct / performance deficiencies. *See* Exhibit 7.

**Plaintiff's Response:** Uncontroverted that the letter referred to five independent events; controverted that they were "performance deficiencies." [Ex. 1, ROI 166-167; Ex. 2, Sly Dec.].

**Defendant's Reply**: Plaintiff's response does not controvert SOF 17. The demotion letter explicitly states "[d]uring this probationary period, you have demonstrated the following conduct/performance deficiencies" and lists five supporting events. SOF 17 is thus uncontroverted.

18. The demotion letter explained that on April 9, 2023, Sly was instructed to (1) upload his subordinate's performance plan and release the plans back to the employees electronically and (2) provide his supervisor with a list of his subordinates and their PIV badge deficiencies by close of business on April 14, 2023. *See* Exhibit 7 at VA_000171.

**Plaintiff's Response:** Uncontroverted that the letter says these things. Controverted that it constituted a performance deficiency as at least two other supervisors also failed to meet the requested deadline as the system was new and neither he nor the other two supervisors were trained on the system. [Ex. 2, Sly Dec; Ex. 1, ROI 166].

**Defendant's Reply**: Plaintiff's response does not controvert SOF 18 but is ancillary commentary and a statement of opinion. The demotion letter explicitly states "[d]uring this probationary period, you have demonstrated the following conduct/performance deficiencies" including the events listed in SOF 18 and Plaintiff presents no affirmative evidence indicating otherwise or evidence that other similarly situated employees were treated differently. SOF 18 is uncontroverted.

19. The demotion letter further explained Sly failed to timely complete the assigned tasks from April 9, 2023. *See* Exhibit 7 at VA_000171.

**Plaintiff's Response:** Controverted. The letter appears to have given Sly an extension within which to complete the task and that he did complete the task within the extended time frame. [Ex. 1, ROI 171].

**Defendant's Reply**: Plaintiff's response does not controvert SOF 19. The fact that Sly was "given an extension" is irrelevant as he failed to complete the tasks on the assigned date. The demotion letter explains because Plaintiff did not timely complete the tasks from April 9, 2023, he received a second email instructing him to complete the task. SOF 19 is undisputed.

20. The demotion letter stated on April 3, 2023, after it was reported that the trash was not taken out over the weekend and examining rooms were not properly cleaned, Sly failed to inspect, verify, and correct the deficiencies. *See* Exhibit 7 at VA_000171.

**Plaintiff's Response:** Controverted. The demotion letter does say that a report was made that the weekend and examining rooms were not cleaned. The letter indicates that he was asked to inspect, verify and correct any deficiencies. Sly has testified that he did that. [Ex. 2, Sly Dec]. The letter does not indicate that he failed in the inspection, verification and correction of deficiencies. It goes on in the next sentence to state "You were also asked to set up biweekly meetings and add the meetings to the stakeholder's calendars, which you failed to do as instructed." [Ex. 1, ROI 171]. Sly testified that he did meet regularly with the Chief of Prosthetics and other members of the team. [Ex. 2, Sly Dec.]. However, he could not upload anything into the stakeholder calendar because he did not have the requisite permissions and could not get on the program. [Ex. 2, Sly Dec.]. The syntax of the letter indicates that the failing was not uploading to stakeholder calendars, which Sly could not do.

**Defendant's Reply**: Plaintiff's response does not controvert SOF 20 and instead confirms its accuracy. Plaintiff's response admits that the demotion letter states "a report was made that the [trash was not taken out over the] weekend and examining rooms were not cleaned." Plaintiff attempts to controvert SOF 20 by citing his own declaration providing his recollection of the events

outlined in the demotion letter- this however is insufficient to controvert SOF 20. *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) ("A plaintiff may not merely point to self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."); *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1028-29 (8th Cir. 2006) (conclusory allegations, speculation, and conjecture are insufficient to withstand summary judgment).

21. The demotion letter also noted Sly failed to set up biweekly meetings after being instructed to do so on April 3, 2023. *See* Exhibit 7 at VA_000171.

**Plaintiff's Response:** Controverted. The syntax of the letter is ambiguous as to whether the alleged failing is the failure to set up meetings or the failure to add them to the calendar. As to the merits of the letter, Sly did meet with the Prosthetics Chief and other members of his team more often than the bi-weekly meetings. [Ex. 1, ROI 166; Ex. 2, Sly Dec.].

**Defendant's Reply**: Plaintiff's response does not controvert SOF 21 as the demotion letter explicitly states "[y]ou were also asked to set-up biweekly meetings and add the meetings to the Stakeholder's calendars, which you failed to do as instructed." Instead, Plaintiff cites to self-serving statements in an attempt to controvert SOF 21. *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) ("A plaintiff may not merely point to self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."); *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1028-29 (8th Cir. 2006) (conclusory allegations, speculation, and conjecture are insufficient to withstand summary judgment). SOF 21 is uncontroverted.

22. The demotion letter stated that on March 29, 2023, Sly's supervisor instructed Sly to have his subordinate staff members sign a copy of the Code of Conduct by April 5, 2023, and send the signed copies to the Service Administrative Officer. *See* Exhibit 7 at VA_000172.

**Plaintiff's Response:** Uncontroverted that the demotion letter makes that representation. Controverted that it is true. The Code of Conduct signatures were the responsibility of Supervisors Mott and Summers who completed the task. [Ex. 1, ROI 166-167; Ex. 2, Sly Dec.].

**Defendant's Reply**: Plaintiff does not controvert SOF 22 and instead cites to self-serving statements to support his contention that the stated responsibilities were not his. *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) ("A plaintiff may not merely point to self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."); *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1028-29 (8th Cir. 2006) (conclusory allegations, speculation, and conjecture are insufficient to withstand summary judgment). Plaintiff presents no evidence that he complied with the March 29, 2023, request or that it was actually the responsibility of Mott and Summers. Instead, Plaintiff admits that the demotion letter states the substance of SOF 22.

23. The demotion letter stated that the March 29, 2023, task was not completed until Sly received a second email from his supervisor on April 11, 2023. *See* Exhibit 7 at VA_000172.

**Plaintiff's Response:** Uncontroverted that the Demotion Letter so states. Controverted that it is true. See Response to Defendant's Statement of Fact No. 22. (Hereafter DSOF).

**Defendant's Reply**: Plaintiff attempts to controvert SOF 23 by citing to his non-response to SOF 23. Plaintiff admits that the demotion letter states that the March 29, 2023 tasks were not completed until receiving a second email from his supervisor. Plaintiff ultimately cites no evidence to controvert SOF 23, which is admitted.

24. The demotion letter stated that on December 9, 2023, Sly was notified that between January 1, 2023, and May 13, 2023, he failed to complete and document 15 weekly inspections. *See* Exhibit 7 at VA_000172.

**Plaintiff's Response:** Controverted. The letter does not state that he failed at all times between January 1, 2023 and May 13, 2023 to complete the 15 weekly inspections. It indicates that on four occasions during that time frame he failed to complete those inspections. [Ex. 1 ROI 171]. The difference is significant as all of the supervisors failed to complete all of their inspections at some point in time. Plaintiff was singled out for this "failure." [Ex. 2, Sly Dec.].

**Defendant's Reply**: Plaintiff's response is nonresponsive to SOF 24 as he admits he did not complete 15 *total* weekly inspections as required and Plaintiff admits he failed to complete four inspections during that time. SOF 24 is thus uncontroverted.

26. The demotion letter stated Sly failed to obtain his employees' uniform sizes causing them to not have the appropriate uniforms. *See* Exhibit 7 at VA_000172. Sly was notified of his employees' uniform deficiencies on April 6, 2023, and May 4, 2023. *See* Exhibit 7 at VA_000172.

**Plaintiff's Response:** Controverted. The Demotion Letter does not say that the failure to obtain uniform sizes has caused the employees not to have appropriate uniforms. [See Ex. 1, ROI 172]. As for the allegations contained in the Demotion Letter, they are false. Mr. Sly did as he was instructed and on multiple occasions "encouraged" his employees to wear the appropriate uniforms; he contacted Linen Supply on their behalf to get the uniforms and he sent non-complying employees to the Linen Department to retrieve uniforms. [Ex. 1, ROI 167; Ex. 2, Sly Dec.]. Further, at least one the employees is still not in compliance but his Caucasian supervisor has received no demotion or discipline as a result. [Ex. 2, Sly Dec.; Ex. 4, Maes Dec].

**Defendant's Reply**: Plaintiff's response does not controvert SOF 26 and instead confirms that the demotion letter indicated several of Plaintiff's employees were not wearing uniforms during the huddles and that Plaintiff failed to obtain their uniform sizes. To the extent Plaintiff attempts to

use his declaration to convert SOF 26, it is insufficient as his own testimony is not probative evidence to support his claim. *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) ("A plaintiff may not merely point to self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."); *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1028-29 (8th Cir. 2006) (conclusory allegations, speculation, and conjecture are insufficient to withstand summary judgment). Lastly, to the extent Plaintiff cites the declaration of Shawn Maes [sic] to support his response to SOF 26, the declaration is also not probative. Paragraph 16 does not controvert the uniform deficiencies from April 6, 2023, and May 4, 2023.

34. The only claim accepted for investigation was if Sly was discriminated against based on race, color, sex, age, disability, and reprisal when effective July 1, 2023, he was demoted from supervisor to housekeeping aide. *See* Exhibit 11.

**Plaintiff's Response:** Controverted. Harassment / hostile work environment was administratively investigated by the EEO. [Ex. 1, ROI 041].

**Defendant's Reply**: Plaintiff's response does not controvert SOF 34. The only claim accepted for investigation was if Sly was discriminated against based on race, color, sex, age, disability, and reprisal when effective July 1, 2023, he was demoted from supervisor to housekeeping aide. Questions pertaining to harassment / hostile work environment were included in the affidavits because of Plaintiff's whistleblower activity, not because the claim was explicitly accepted for investigation. SOF 34 is therefore uncontroverted.

35. The EEO included questions pertaining to a hostile work environment in the responsive affidavits because Sly indicated he filed a protected class Whistleblower complaint and complained to the facility director about being subjected to a hostile work environment.

**Plaintiff's Response:** Controverted. The meaning of the EEO investigator's report is somewhat confusing. The report states as follows: Note: Complainant said because he filed a protected class Whistleblower complaint and a complaint to the facility director about being subjected to a hostile work environment based on his protected class, harassment / hostile work environment questions were included in all affidavits. [Ex. 1, ROI 041].

**Defendant's Reply**: Plaintiff's response does not controvert SOF 35 and instead confirms its accuracy that questions pertaining to a hostile work environment were included because of Plaintiff's whistleblower complaint. SOF 35 is thus uncontroverted.

# DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL STATEMENT OF MATERIAL FACTS

1. Plaintiff is a light skinned African American disabled Veteran over the age of 40. [Ex. 1, ROI 046-047].

**Defendant's Response**: Undisputed.

3. Mr. Sly never received any formal discipline. The only discipline of any kind that he knows of in his file is a written counseling issued to him on December 15, 2022 by his supervisor, Jeremy Brown. [Ex. 1, ROI 200].

**Defendant's Response**: Undisputed but immaterial as whether Plaintiff received any formal discipline is not relevant to the merits of this motion because Plaintiff was in his probationary period.

4. The counseling letter was not supposed to be disciplinary in nature. [Ex. 1, ROI 201].

**Defendant's Response**: Undisputed for purposes of this motion only.

9. Mr. Sly's reviews were always fully successful or better, even receiving "Outstanding" on some of them. [Ex. 1, ROI 257-274; Ex. 1, ROI 052].

**Defendant's Response**: Undisputed that from October 1, 2019 to September 30, 2020, Plaintiff received a fully successful performance review rating. ECF No. 21-1 at 263; 272. Disputed that Plaintiff always received fully successful or outstanding reviews as the only support for this statement is Sly's own self-serving claims about his performance reviews. Further, any reviews prior to Plaintiff's promotion are irrelevant because when he changed positions, Sly was not being rated on the same metrics or for performing the same functions as he was rated on for any previous reviews.

10. Mr. Sly became aware of sexual harassment of his staff by supervisor Banks. [Ex. 1, ROI 137].

**Defendant's Response**: Undisputed that on March 9, 2022, Auna Ricks emailed Sly regarding an alleged sexual harassment by Banks. However, Rick's allegations are irrelevant to the substance of Sly's claims or whether he can maintain a claim at trial because Sly's underlying EEO complaint makes no mention of reporting any alleged harassment by Banks or that Sly suffered retaliation for filing a complaint relating to Ricks or Banks. Additionally, the cited email is inadmissible hearsay that cannot be relied upon to defeat summary judgment. *Sherman v. Collins*, 158 F.4th

904, 908 (8th Cir. 2025) (citing *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010)).

11. Sly also learned that the harasser, Banks, was a close friend of Dominique Henderson, raising a concern of nepotism as well. [Ex. 1, ROI 137].

**Defendant's Response**: Undisputed that on March 9, 2022, Auna Ricks emailed Sly and alleged Banks was a close friend of Dominique Henderson. However, the relationship between Banks and Henderson is irrelevant to the substance of Sly's claims or whether he can maintain a claim at trial and has no bearing on the pending motion for summary judgment. As stated, the cited email is inadmissible hearsay that cannot be relied upon to defeat summary judgment. *Sherman v. Collins*, 158 F.4th 904, 908 (8th Cir. 2025) (citing *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010)).

12. Banks was given a no contact order, but he violated it without consequences. [Ex. 1, ROI 137].

**Defendant's Response**: Undisputed that on March 9, 2022, Auna Ricks emailed Sly and alleged Banks was given a no contact order and violated it without consequences. However, as with PSOF 10 and 11, this is inadmissible hearsay that cannot be relied upon to defeat summary judgment. *Sherman v. Collins*, 158 F.4th 904, 908 (8th Cir. 2025) (citing *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010)). Further, the allegations relating to Banks are irrelevant to the substance of Sly's claims or whether he can maintain a claim at trial and ultimately have no bearing on the pending Motion for Summary Judgment.

13. Sly brought the sexual harassment to the attention of the KCVA as well as harassment of his co-workers. [Ex. 1, ROI 108, 048].

**Defendant's Response**: Disputed. The cited document (ECF No. 22-1 at 108) does not reflect that Sly brought sexual harassment to the attention of the KCVA or harassment of his co-workers. Instead, the cited evidence reflects Brown requested Sly to look into an issue in the main men's restroom. The remaining evidence in support of PSOF 13 (ECF No. 22-1 at 48) is Sly's own self-serving claims. *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) ("A plaintiff may not merely point to self-serving allegations but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."); *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1028-29 (8th Cir. 2006) (conclusory allegations, speculation, and conjecture are insufficient to withstand summary judgment); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) ("The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"). Plaintiff cites to no evidence to support PSOF 13.

14. That harassment included an unfair work load, having a supervisor threaten to shoot them, having the only African American shift singled out for monitoring without reviewing the actions of the other shifts. [Ex. 1, ROI 108, 048].

**Defendant's Response**: Disputed. The cited document (ECF No. 22-1 at 108) does not reflect the substance of PSOF 14. As with PSOF 13, the cited evidence reflects Brown requesting Sly to look into an issue in the main men's restroom and that Sly responded "Why is it that only the trash was taken out and nothing else? Two weeks the third shift was monitored by you and Henderson, but Like I said before, no one is held accountable for their actions or non-actions when it pertains to 15th and 2nd shift. You all are making this easy!" Further, the remaining evidence in support of PSOF 14 (ECF No. 22-1 at 48) is Sly's own self-serving claims about the alleged harassment. *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) ("A plaintiff may not merely point to self-serving allegations but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."); *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1028-29 (8th Cir. 2006) (conclusory allegations, speculation, and conjecture are insufficient to withstand summary judgment); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) ("The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"). Moreover, there is no evidence to support the claim that a supervisor threatened to shoot them or that the only African American shift was singled out.

15. Mr. Sly's actions were a protected activity although he did not file an EEO complaint prior to the one out of which his current case arises. [Ex. 1, ROI 048].

**Defendant's Response**: Undisputed that Sly engaged in a prior protected activity but to the extent he is alleging this activity related to any claims by Auna Ricks PSOF 15 is disputed. There is no evidence that Sly raised timely raised this claim let along reported it to his supervisors.

18. Mr. Sly had a reasonable belief that the actions of the Agency were creating a hostile work environment based on age, disability, race, color and reprisal for protected activity when he reported his supervisors' actions – and inaction regarding the sexual harassment claims of the women in his division. [Ex. 1, ROI 052; ROI 137].

**Defendant's Response**: Undisputed for purposes of this motion only that Sly had a reasonable belief that the actions of the agency created a hostile work environment based on age, disability, race, and color and reprisal for protected activity when he reported his supervisors. Disputed as to his belief that the agency's inaction regarding the alleged sexual harassment claims in his division, as this was not raised in the underlying administrative record and Plaintiff cites no evidence to support this statement.

*Pretext*

*Allegations that are provably false:*

*Cleanliness of Prosthetics department.*

3. Sly also met with the Prosthetics department chief and members of his department to discern their concerns. He met with them every Monday and Tuesday before he left for the CBOC locations. [Ex. 2, Sly Dec].

**Defendant's Response**: Disputed but immaterial. The only support for this claim is Sly's own testimony. A plaintiff's own unsupported and conclusory allegations cannot be used to defeat summary judgment. *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) ("A plaintiff may not merely point to self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."); *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1028-29 (8th Cir. 2006) (conclusory allegations, speculation, and conjecture are insufficient to withstand summary judgment); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011 ("The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"). Plaintiff relies on no substantive facts or evidence beyond this base allegation to support this claim and ultimately refute the concerns cited in the demotion letter.

*Uniforms.*

48. The only individuals who have been demoted in this area are both black. [Ex. 1, ROI 141 (Aff. Of Jeremy Brown)].

**Defendant's Response**: Undisputed that during the relevant period of this complaint the two other individuals who were demoted were also black and were demoted by Brown and Henderson who are also black. PSOF 48 is disputed in that it implies the only individuals in this area who have ever been demoted were black. Plaintiff has to evidence to support this broad allegation.

49. As a result of the actions of the Agency, Mr. Sly has suffered harm including lowered income, lowered retirement by decreasing his "high threes" for purposes of calculating his retirement; it impacts his ability to be considered for future supervisory positions limiting his ability to be promoted; it has caused stress, anxiety, depression, and an exacerbation of his PTSD. He has begun seeing a psychiatrist as a result. [Ex. 1, ROI 051].

**Defendant's Response**: Disputed but immaterial. Sly's self-serving claims about suffering harm are irrelevant to the outcome of the Summary Judgment Motion which is not premised on Sly's ability or inability to show damages. This has nothing to do with the pending Motion.

## II.     Overview

In opposing summary judgment, Sly cites no evidence to support his claim that his protected activity and characteristics resulted in prohibited treatment under Title VII. Plaintiff unsuccessfully attempts to refute the undisputed evidence by citing self-serving allegations from his own declaration and irrelevant facts from witnesses without knowledge of the relevant period applicable to Plaintiff's claims. Because Sly presents no probative evidence to support his claims summary judgment should be granted.

## III.    Sly's Discrete Claims of Discrimination and Retaliation Fail (Counts I and III)

The undisputed evidence shows the only discrete claim of discrimination and retaliation before the Court is Plaintiff's demotion from his supervisory position. SOF 34. To the extent Plaintiff attempts to muddle the record with new discrete acts of retaliation and discrimination such as the denial of a reasonable accommodation, shift charges, or occurrences relating to medical emergencies, these claims should not be considered as they were not properly exhausted.

Plaintiff admits the agency provided five conduct/performance deficiencies amounting to conduct unbecoming of a federal supervisor in support of his demotion, but asserts the cited conduct is either "provably false" or other "similarly situated employees were treated differently." Plaintiff's response falls short of withstanding summary judgment, not only because he fails to establish a prima facie claim, but also, he fails to establish the Defendant's actions were a pretext for discrimination and retaliation. Summary judgment should be granted on Counts I and III.

### A. Plaintiff Cannot Establish Defendant's Allegations Are False

Plaintiff argues three of the demotion letter's cited conduct/performance deficiencies are a pretext for retaliation and discrimination because they are "provably false," but fails to provide any probative or admissible evidence in support thereof. And, even if Plaintiff could establish pretext, which he cannot, there is no evidence to support a finding of discriminatory animus relating to these instances.

As it relates to the demotion letter's second identified conduct/performance deficiency (ECF No. 18-7 at 2B), Plaintiff argues he sufficiently performed his duties in the prosthetics department and met with members of the department to discern their concerns. He also argues he did not have access to the "stakeholder calendar" and could therefore not upload meetings. As it relates to the fifth conduct/performance deficiency (*id.* at 2E), Plaintiff alleges the statement that he "allowed the employees to wear clothing that does not fit the dress code is absolutely false." Finally, Plaintiff argues he had positive relationships with his staff and cites the declaration of Antonine Williams to establish that the fourth cited conduct/performance deficiency (*id.* at 2D) is also false.

Plaintiff's opposition fails to create a genuine issue of material fact because Plaintiff's arguments are wholly unsupported. Plaintiff attempts to prove that the cited conduct/performance deficiencies are false by citing to his own recollection of the subject events. But, as this Court is well-aware, "a plaintiff may not merely point to self-serving allegations but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005). And, "conclusory testimony is not enough to defeat summary judgment." *Ballard v. Heineman*, 548 F.3d 1132, 1136 (8th Cir. 2008). Further, Plaintiff "cannot simply rest on the allegations in [the] complaint" and instead

"must offer evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Sherman v. Collins*, 158 F.4th 904, 907 (8th Cir. 2025).

Plaintiff also relies on the declaration of Antonine Williams to establish that he had good relationships with his employees. ECF No. 21-3. However, this declaration should not be considered by the Court because Antonine Williams worked at the VA from October 2013 to May 2021. The facts relevant to the underlying allegations took place between July of 2022 (when Plaintiff was promoted) and July 2023 (when Plaintiff received his right to sue letter). Williams has no personal knowledge of the relevant facts as she was not employed with the VA during the aforementioned period and her statements do not dispute that Plaintiff had poor relations with his staff while he was a supervisor. Similarly, it is unclear if Plaintiff is relying on the declaration of Shawn Mays to argue the uniform deficiencies are also "provably false." Regardless the declaration of Shawn Maes does not controvert the uniform deficiencies from April 6, 2023, and May 4, 2023. ECF No. 21-4 at ¶16.

Plaintiff's attempt to establish that Defendant's allegations are "provably false" fails because he presents no evidence showing Defendant's explanations had no basis in fact. Further, Plaintiff presents no evidence for which a reasonable factfinder could infer discrimination or retaliation for the cited conduct. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1050 (8th Cir. 2011).

### B. Plaintiff Fails to Identify Similarly Situated Comparators

Next, Plaintiff argues the remaining conduct/performance deficiencies outlined in his demotion letter are a pretext for discrimination and retaliation because he was treated differently than other similarly situated employees. Despite making this argument, Plaintiff identifies no

similarly situated comparators and fails to establish that his demotion was in fact based on his protected characteristics.

It is well-established that "the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 938 (8th Cir. 2019) (citations omitted). To prevail, the plaintiff must "show that the two were similarly situated in all relevant respects" meaning plaintiff and the potential comparators "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Collins v. Kan. City Mo. Pub. Sch. Dist.*, 92 F.4th 770, 772 (8th Cir. 2024). Even if Plaintiff can establish that he was treated different than a true comparator, he still must establish that the disparate treatment was based on his protected characteristics. *Beasley*, 933 F.3d 932 at 939.

Plaintiff attempts to argue the demotion letter's first conduct/performance deficiency (ECF No. 18-7 at 2A) is a pretext for discrimination and retaliation because two other supervisors, Devin Mott and James Summers, were also late in uploading their ePerformance plans and neither employee received any subsequent discipline. Plaintiff also argues Mott and Summers were required to have subordinate staff members sign the Code of Conduct and they were not disciplined, such that the third conduct/performance deficiency (*id.* at 2C) is also a pretext for discrimination and retaliation.

First, Plaintiff provides no evidence in support of the validity of these claims. *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1028-29 (8th Cir. 2006) (conclusory allegations, speculation, and conjecture are insufficient to withstand summary judgment). Second, Plaintiff fails to engage with his assertion that Mott and Summers are comparators under the Eighth Circuit's rigorous standards and cites no law in support of his own arguments. Plaintiff does not

allege that Mott and Summers were subject to the same supervisors, standards, or circumstances and ultimately provides no argument as to how they are similarly situated in "all relevant respects." *Maras v. Curators of the Univ. of Mo.*, 983 F.3d 1023, 1029 (8th Cir. 2020). As the evidence shows, Sly was in his supervisory probationary period at the time of his demotion.[1] Sly does not allege, yet alone prove, that Mott and Summers were similarly situated in this key respect. Plaintiff's general assertion that Mott and Summers are comparators is insufficient to establish pretext.

Similarly, Plaintiff attempts to allege pretext as to the fourth conduct/performance deficiency cited in the demotion letter (ECF No. 18-7 at 2D) because "other supervisors likewise failed to provide the requisite number of reports." As with his arguments relating to Mott and Summers, Plaintiff does not identify the purported comparators and attempts to excuse his own conduct by offering unconvincing justifications in support thereof. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (citations omitted) ("the nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial ... allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy."). This argument is unfounded.

Sly's response demonstrates that he is unable to establish a prima facie claim as there is no evidence that gives rise to an inference of discrimination and retaliation in this case. And, even if Sly could meet this initial requirement, he has not articulated any reason for this Court to believe

---

[1] Under 5 U.S.C. § 3321, an individual serving in an initial appointment as a supervisor or manager in the competitive service is required to serve a probationary period. *See De Cleene v. Dep't of Educ.,* 71 M.S.P.R. 651, 654–56 (1996) (describing the legislative history of this statute and noting OPM's implementing regulations at 5 C.F.R. §§ 315.901–.909). An individual in the competitive service who has been promoted to a supervisory position and who does not satisfactorily complete the probationary period, like the Plaintiff here, "shall be returned to a position of no lower grade and pay than the position from which the individual was ... promoted." 5 U.S.C. § 3321(b); *see* 5 C.F.R. § 315.907(a).

Defendant's explanation for Plaintiff's demotion is a mere pretext for discrimination and retaliation. *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 918 (8th Cir. 2007). Therefore, the Court should grant summary judgment on Counts I and III.

### IV. Sly's Hostile Work Environment Claim Fails (Count II)

Summary judgment also is warranted on Sly's discriminatory and retaliatory hostile work environment claim. Sly exclusively relies on the fact that the complained of events amount to a hostile work environment because they occurred over one year's time and makes no persuasive arguments as to how these events relate to his protected characteristics/activity or were sufficiently severe or pervasive. Sly's mere reliance on temporal proximity is insufficient to establish causation and the complained of events do not rise to the Eighth Circuit's demanding standards.

As a preliminary matter, although Plaintiff's hostile work environment claim was not accepted for investigation, the EEO included questions pertaining to a hostile work environment in the responsive affidavits because Sly indicated he filed a protected class whistleblower complaint and complained to the facility director about being subjected to a hostile work environment. SOFs 34 and 35. The Court need not make that determination as to whether this claim was in fact properly exhausted because Plaintiff's hostile work environment claim is insufficient as a matter of law.

Plaintiff's response fails to engage with Defendant's substantive briefing as to why he cannot maintain a claim for a discriminatory and retaliatory hostile work environment. Instead, Plaintiff alleges he was harassed when (1) on an unknown date Plaintiff "had the police called on him" while making an "official complaint"; (2) Sly was demoted; (3) after the demotion Sly was placed under the supervision of Miller, against whom he had complained of harassment and misconduct; (4) Miller "treated Sly with disdain" and lied to Sly; (5) Miller "recruited a floor

technician to watch Sly and report on all his actions"; and (6) Brown allegedly refused to interact with Sly. ECF No. 22 at 7.[2] Plaintiff also alleges "the supervisors played favorites with the employees" which created a "hostile environment for *all* the employees." ECF No. 22 at 7, ¶ k.

Sly does not provide specifications as to when these isolated events occurred and instead relies on his own vague account thereof, inadmissible hearsay, or declarations of individuals with no personal knowledge of the events pertaining to this case. *Bloom*, 440 F.3d at 1028-29 (conclusory allegations, speculation, and conjecture are insufficient to withstand summary judgment). After alleging these isolated incidents, Sly's only argument in support of his claim is that "these actions meet the Court's requirements for harassment and retaliatory harassment." ECF No. 22 at 16. Plaintiff's argument is insufficient to withstand summary judgment.

Further, Sly's scattered response presents no evidence to establish that the complained of actions were the result of retaliatory animus or his protected characteristics. Critically, Plaintiff cannot maintain his hostile work environment claim was based on his protected activity and characteristics while simultaneously maintaining that the entire EMS division was subjected to the same treatment. *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 893 (8th Cir. 2005) (citations

---

[2] Although it is unclear if Plaintiff now attempts to assert that he suffered a retaliatory hostile work environment for allegedly reporting sexual harassment, to the extent Plaintiff is asserting this claim, it is without any merit. First, Plaintiff relies on inadmissible hearsay to establish that the alleged sexual harassment pertaining to Banks occurred. PSOFs 10-13. Second, there is no evidence in the record that shows once Sly learned of this alleged sexual harassment that he did in fact report it. Not withstanding these issues, the analysis contained herein shows that as a matter of law Sly did not suffer from a retaliatory hostile work environment, regardless of the basis of his asserted protected activity.

Further, to the extent Plaintiff attempts to allege protected activity relating to a request for a reasonable accommodation or a transfer, it is unclear how these facts relate to the claims asserted in this case. Plaintiff's own testimony indicates these events occurred *before* his promotion to supervisor. ECF No. 18-2 at VA_000049.

Lastly, to the extent Plaintiff attempts to assert a non-selection claim, this claim was also not properly exhausted.

omitted) ("[F]or conduct to be considered in a race-based hostile work environment claim, the conduct must have a racial character or purpose to support a hostile work environment claim.").

Lastly, Sly does not cite any authority where the complained of events amount to a hostile work environment under Eighth Circuit law. *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 807 (8th Cir. 2019) ("More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment."). And, even assuming Sly subjectively perceived the alleged conduct to be sufficiently severe and pervasive, his claim fails as he does not allege how Defendant's conduct was "sufficiently severe or pervasive [so as] to create an environment that a reasonable person would find hostile or abusive and that actually altered the conditions of [his] employment." *Hales v. Casey's Mktg. Co.*, 886 F.3d 730 735 (8th Cir. 2018). Simply put, Sly makes no attempt to consider the relevant law in support of his claim.

Sly must do more than just allege his work environment was "merely rude or unpleasant," instead, he "must prove the conduct was extreme in nature" *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 823 (8th Cir. 2017). Sly fails to meet the Eighth Circuit's high threshold for such claims and cannot establish the requisite objective and subjective standards required to withstand summary judgment.

**V.      Conclusion**

A jury could not find in favor of Plaintiff Roderick Sly on any of his claims and this case should not proceed to trial. Defendant requests that the Court grant summary judgment.

Case 4:24-cv-00448-DGK    Document 32    Filed 01/26/26    Page 19 of 20

19

Date: January 26, 2026

          Respectfully submitted,

          R. Matthew Price
          United States Attorney

By:    */s/ Vanessa C. Kamberis*
          Vanessa C. Kamberis, IL #6336132
          Assistant United States Attorney
          Western District of Missouri
          400 East Ninth Street, Suite 5510
          Kansas City, Missouri 64106
          Telephone: (816) 426-3130
          Facsimile: (816) 426-3165
          Email: vanessa.kamberis@usdoj.gov

          ATTORNEYS FOR DEFENDANT