# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

RODERICK SLY, )
)
    Plaintiff, )
)
    v. )         No. 4:24-CV-00448-DGK
)
DOUGLAS COLLINS, SECRETARY, )
UNITED STATES DEPARTMENT OF )
VETERANS AFFAIRS, )
)
    Defendant. )

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an employment discrimination case. Plaintiff Roderick Sly alleges claims for discrimination, hostile work environment, and retaliation against Defendant Secretary of the Department of Veterans Affairs for alleged actions at the Kansas City Veterans Affairs Medical Center.

Now before the Court is Defendant's motion for summary judgment on all claims. ECF No. 18. Finding that there are no genuine issues as to any material fact and that Defendant is entitled to judgment as a matter of law, the Court GRANTS the motion.

### Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). The party seeking summary judgment bears the burden of showing a lack of a genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). But the nonmoving party "cannot simply rest on the allegations in [his] complaint." *Sherman v. Collins*, 158 F.4th 904, 907 (8th Cir. 2025). "Instead, he must substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Grant v. City of Blytheville, Arkansas*, 841 F.3d 767, 770 (8th Cir. 2016) (alterations in original) (citations omitted).

## Undisputed Material Facts

The material, undisputed facts are as follows.[1] Plaintiff Roderick Sly is a light-skinned Black, African-American Male, 60, Disabled, who has engaged in protected activity. On July 17, 2022, Plaintiff was promoted from the position of Housekeeping Aid to Housekeeping Aid Supervisor at the Kansas City Veterans Affairs Medical Center ("KCVAMC") in Environmental Management Service ("EMS"). EMS is responsible for housekeeping, janitorial, and sanitation services at the KCVAMC. Plaintiff had worked at the KCVAMC for six years before the promotion. Upon promotion, Plaintiff was subject to a one-year supervisory probationary period. His first line supervisor was Jeremy Brown, and his second line supervisor was Dominique

---

[1] The Court has limited the facts to those that are undisputed and *material* to the pending summary judgment motion. *See* Fed. R. Civ. P. 56(c) (emphasis added); L.R. 56.1(a). The Court has excluded legal conclusions, argument presented as fact, proposed facts which are duplicative of other proposed facts, and proposed facts which are not admitted and not properly supported by the record or admissible evidence. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). The Court has included proposed material facts which have been improperly controverted. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

The Court struck the majority if Plaintiff's additional statement of facts, ECF No. 26, for failure to comply with the Court's orders and the Local Rules. ECF No. 31. As the Court notes below, even if the Court were to consider any of Plaintiff's stricken facts that were otherwise properly supported, its conclusions on the present motion would not change.

Henderson. Brown is an African-America Male aged 47 at the relevant time, and Henderson is an African-American Male aged 38 at the relevant time. Brown presented Plaintiff a memorandum of Supervisory Expectations on July 29, 2022. Brown and Plaintiff signed the memorandum.

On June 9, 2022, before Plaintiff's promotion, Plaintiff authored a hostile work environment complaint on behalf of his EMS Service Line against the EMS supervisors. The complaint alleged: (1) Henderson and Brown were "in our department overnight in the guise of evaluating third shift employees for two weeks, while both are present daily do (sic) not organize an inspection of first and second shift;" (2) "Throughout the past two years, most employees are unable to address management issues without discomfort and distrust;" (3) "Under current management . . . there has been a revolving door of supervisors. In the last nine months, five supervisors have resigned due to a lack of nonexistent leadership, which has resulted in an adverse effect on EMS and all three tours of duty;" (4) "upper management has deliberately tried to set up various employees to fail and have informed recent supervisors of those same actions;" (5) "This environment has created completely unacceptable working conditions and is causing employees mental stress, anxiety, depression, and conflict between all three tours of duty;" (6) "although there was not any justification for management's reasoning, third shift employees suspect that previously written grievances filed against our department management ultimately resulted in retaliation." ECF No. 18-5 at 6; *see id.* at 1–4.

The VA issued a Fact Finding Report on August 17, 2022, that found insufficient evidence to support the hostile work environment claim. Plaintiff also reported allegations of workplace sexual harassment to his supervisors sometime in the weeks leading up to his promotion.

On December 16, 2022, about five months into Plaintiff's supervisory probationary period,

Jeremy Brown issued Plaintiff a Written Counseling for failing to follow instructions. The Counseling informed Plaintiff that he had not updated the stakeholder meeting calendar as directed, had not completed a daily supervisor checklist as directed, and had not completed the number of Walsh sanitation inspections he had been directed to complete.

On June 2, 2023, Henderson and Brown determined that Plaintiff failed to satisfactorily complete his supervisory probationary period and demoted him to his previous role of Housekeeping Aid, effective July 3, 2023. The demotion letter noted the following conduct/performance deficiencies, some of which were raised in the December 16, 2022, Written Counseling: Plaintiff's (1) failure to upload his subordinates' performance plan and release the plan back to the employees electronically as directed (the "ePerformance plans"); (2) failure to provide his supervisor with a list of his subordinates and the subordinates' PIV badge deficiencies by April 14, 2023, as directed; (3) apparent neglect of trash removal and cleaning supervision in the Prosthetics Department; (4) failure to set up biweekly meetings with stakeholders and add the meetings to stakeholders' calendars as directed; (5) failure to have his subordinates sign the Code of Conduct by April 5, 2023, as directed; (6) failure to complete the required number of weekly Walsh inspections; (7) failure to obtain his subordinates' uniform sizes to facilitate employee adherence to the department's uniform policy; and (8) failure to foster productive working relationships. ECF No. 18-7 at 1–2. Brown and Henderson demoted two other employees during the relevant time period. Both employees were black.

On June 9, 2023, a week after the demotion letter was issued, Plaintiff contacted facility director Paula Roychaudhuri and an EEO Specialist raising issues with his work environment in EMS. On June 12, 2023, Plaintiff requested reconsideration of his demotion. This request was denied on June 26, 2023.

4

Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*,[2] for discrimination based on race, disability, sex, color, age, and engagement in protected activity (Count I); hostile work environment based on race, disability, sex, color, age, and engagement in protected activity (Count II); and retaliation (Count III).

**Discussion**

Defendant argues Plaintiff's claims for discrimination and retaliation fail under the *McDonnell Douglas* burden-shifting framework. Defendant also argues that Plaintiff fails to establish a prima facie hostile work environment claim because he does not provide evidence that rises to the Eighth Circuit's demanding standard for such a claim. Plaintiff argues he has established prima facie cases for all his claims, and he can survive the *McDonnell Douglas* burden-shifting framework on the discrimination and retaliation claims.

Before addressing these arguments, the Court must note a unifying deficiency in Plaintiff's briefing. Over the course of the last several years, Plaintiff's counsel has appealed several cases like this one to the Eighth Circuit. The plaintiffs in most of those cases also raised disparate treatment/discrimination, hostile work environment, and retaliation claims. The Eighth Circuit routinely affirmed dismissal on the merits of claims because the plaintiffs' claims fell well short of the summary judgment standard. *See Sherman v. Collins*, 158 F.4th 904 (8th Cir. 2025); *Woods v. Collins*, 150 F.4th 967 (8th Cir. 2025); *Martinez-Medina v. Rollins*, 144 F.4th 1091 (8th Cir. 2025); *Parker v. U.S. Dep't of Agric.*, 129 F.4th 1104 (8th Cir. 2025); *Hill v. McDonough*, No. 23-1797, 2024 WL 2890977 (8th Cir. June 10, 2024); *Watson v. McDonough*, 996 F.3d 850 (8th Cir. 2021).

---

[2] The complaint also invokes the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, but, as explained in footnote 3 to this order, Plaintiff has not administratively exhausted any claim related to these laws (e.g., failure to accommodate).

The Court relies on those decisions in its analysis below because they state the general law that applies here, but they are also important because Plaintiff's counsel employs the same arguments and briefing tactics here that she used in those cases. In particular, many of her arguments rely on bald assertions, speculation, and conclusory allegations rather than evidence. So these decisions have controlling force on the merits issues addressed below. With that in mind, the Court addresses each claim in turn.

## I. Defendant is entitled to summary judgment on Plaintiff's discrimination claim.

Assuming Plaintiff has exhausted his administrative remedies on all claims,[3] Defendant argues that Plaintiff's discrimination claim cannot survive summary judgment under the *McDonnell Douglas* burden-shifting framework. Plaintiff counters that he has satisfied *McDonnell Douglas*.

Where, as here, there is no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies to a discrimination claim. *Martinez-Medina*, 144 F.4th at

---

[3] The only claim accepted for administrative investigation was "Whether complainant was discriminated against based on Race, Color, Sex, Age, Disability, and Reprisal when effective July 1, 2023, complainant was demoted from Supervisor to Housekeeping Aide." ECF No. 18-11 at 1. (All other references to the demotion effective date in the record give "July 3, 2023.") Defendant argues that the scope of Plaintiff's discrimination and retaliation claims is limited to the adverse action identified by this claim, namely, Plaintiff's demotion. *See* Motion for Summary Judgement, ECF No. 18 at 8–9. Defendant notes specifically that Plaintiff never amended his claims to include other adverse actions—denial of reasonable accommodation and "[o]ther similar acts as set forth in the Background Facts and Report of Investigation" (shift/schedule changes, occurrences relating to staff medical emergencies)—mentioned in his complaint. *See* Complaint, ECF No. 1 at ¶ 45. Plaintiff only responds by asserting that the investigation included questions about harassment because of Plaintiff's prior hostile work environment complaint. ECF No. 22 at 2–4; *see* ECF No. 18 at 6. Though he does not say so explicitly, the Court assumes Plaintiff is arguing that his hostile work environment claim has therefore been exhausted and is properly brought in this case. *See Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002) ("[T]he breadth of the civil suit is as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination.") (citations, quotation marks, and alterations omitted). The Court assumes the discrimination, retaliation, and hostile work environment claims brought here have been exhausted. Because Plaintiff points to nothing in the record and makes no arguments concerning the other alleged adverse actions he mentions in his complaint, the Court finds they have not been exhausted and does not consider them here. *See Lindeman v. Saint Luke's Hosp. of Kansas City*, 899 F.3d 603, 608 (8th Cir. 2018) (finding failure to accommodate claim not exhausted when it was not included in EEOC Charge of Discrimination).

1096; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). "First, the plaintiff has the burden of making a prima facie case of discrimination." *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 794 (8th Cir. 2019) (citation omitted). That means she must prove: "(1) that she is a member of a protected class; (2) that she was qualified for the position and performed her duties adequately; and (3) that she suffered an adverse employment action under the circumstances that would permit the court to infer that unlawful discrimination was involved." *Martinez-Medina*, 144 F.4th at 1096 (citation modified and quotation marks omitted). If Plaintiff makes this showing, then the burden shifts to Defendant "to articulate a legitimate, nondiscriminatory reason for its adverse employment action." *Id.* (internal quotation marks omitted). If Defendant meets that burden, then Plaintiff must prove that "the proffered reason is pretextual." *Id.* (internal quotation marks omitted). "While the proof necessary to establish a prima face case is minimal, [Plaintiff] must present more substantial evidence to establish pretext because evidence of pretext . . . is viewed in light of the employer's justification." *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 805 (8th Cir. 2019) (citation and internal quotation marks omitted). "Despite this shifting of the burden of production, the plaintiff at all times bears the ultimate burden of persuasion." *Heisler*, 931 F.3d at 794.

Defendant argues Plaintiff cannot establish a prima facie claim of discrimination because he gives no evidence to support an inference of discrimination. Plaintiff counters that he has satisfied all the elements for a prima facie case. Defendant also argues that even if Plaintiff could establish a prima facie case, he cannot survive the final two steps of the *McDonnell Douglas* framework. The Court agrees with Defendant.

Even if Plaintiff had established a prima facie case, he has not carried his burden under *McDonnell Douglas* of producing evidence of pretext, which "is viewed in light of the employer's

7

justification." *Mahler*, 931 F.3d at 805. Defendant has made a compelling argument that Plaintiff fails to establish a prima facie case of discrimination. The Court need not address that issue since Plaintiff cannot show pretext. Defendant has offered Plaintiff's various alleged failures to fulfill his supervisory duties as its legitimate, nondiscriminatory reasons for Plaintiff's demotion. This showing satisfies Defendant's burden under *McDonnell Douglas* and shifts the burden back to Plaintiff to produce evidence that these proffered nondiscriminatory reasons are a pretext for discrimination. *Ryan v. Cap. Contractors, Inc.*, 679 F.3d 772, 777 (8th Cir. 2012) ("[The Eighth Circuit has] consistently held that violating a company policy is a legitimate, non-discriminatory rationale for terminating an employee."); *Cody v. Prairie Ethanol, LLC*, 763 F.3d 992, 996 (8th Cir. 2014) ("This performance-related concern constitutes a legitimate, non-discriminatory justification for discharging [the plaintiff]. Under the *McDonnell Douglas* framework, the burden shifts back to [the plaintiff] to show a genuine dispute whether [the defendant]'s justification is pretextual.").

Plaintiff claims that a number of alleged failures of supervisory duty, which Defendant gives as reasons for his demotion, "are provably false and therefore pretextual." But that is not the standard for proving pretext under *McDonnell Douglas*. "[E]ven if [Plaintiff] could show that [Defendant]'s explanation for the demotion was false, his burden is higher than that—he must show that [Defendant]'s decision was motivated by . . . discrimination." *Williams v. United Parcel Serv., Inc.*, 963 F.3d 803, 809 (8th Cir. 2020). "The employee may establish pretext either by persuading the court that a discriminatory reason more likely motivated the employer or by showing that the employer's proffered explanation is unworthy of credence," *Martinez-Medina*, 144 F.4th at 1096 (citation and quotation marks omitted), "because it has no basis in fact," *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011) (en banc). "A plaintiff may

8

make a sufficient showing of pretext by different means, including showing that an employer: (1) failed to follow its own policies; (2) treated similarly-situated employees in a disparate manner; and (3) made substantial changes over time in its proffered reason for an employment decision." *Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, LLC*, 471 F.3d 843, 847 (8th Cir. 2006) (citations omitted), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

Plaintiff does not argue that Defendant failed to follow its own policies or changed its proffered reasons for demoting him, but he does argue disparate treatment. Plaintiff concedes that some of the performance deficiencies given as grounds for his demotion are true, but he claims other supervisors were treated differently than he was. To show that an employer treated similarly-situated employees in a disparate manner, Plaintiff must show that the purported "similarly-situated employees" are similarly-situated "in all relevant respects," that is, they "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Collins v. Kansas City Missouri Pub. Sch. Dist.*, 92 F.4th 770, 772 (8th Cir. 2024) (citations omitted). This is a "rigorous" standard, *id.*, and Plaintiff fails to meet it here.

With respect to the ePerformance plans and Code of Conduct signatures, Plaintiff asserts (1) two other supervisors, Devin Mott and James Summers, were also late in uploading the ePerformance plans but were not disciplined in any way; and (2) getting Code of Conduct signatures was Mott and Summers' responsibility, not Plaintiff's, and they either accomplished the task or were not disciplined for not doing so.[4] According to Plaintiff's opposition brief, Summers is white and has not engaged in protected activity, Mott has not engaged in protected activity

---

[4] Plaintiff's briefing makes both assertions. *See, e.g.*, ECF No. 21 at ¶ 22; ECF No. 22 at 11.

(Plaintiff does not identify Mott's color or race), and neither Summers nor Mott is disabled. Plaintiff offers no evidence that Summers and Mott answered to the same supervisors as he did or were on a supervisory probationary period as he was during the relevant time. What Plaintiff has asserted does not show these supervisors were similarly-situated to him in all relevant respects. On the Walsh inspection reports, Plaintiff similarly asserts that certain other unidentified supervisors failed to provide the required number of inspection reports but were not disciplined. Here, Plaintiff offers even less evidence than with Summers and Mott and so likewise fails to show that these "other supervisors" were similarly-situated to him in all relevant respects. None of these other supervisors is a probative comparator.

Plaintiff claims that other alleged performance deficiencies are false. Again, Plaintiff's burden to show pretext goes beyond merely showing that Defendant's explanation for the demotion was false. *Williams*, 963 F.3d at 809. To show that Defendant's proffered explanations for its decision to demote Plaintiff have no basis in fact and should thus not be believed because they are a pretext, Plaintiff must show that Defendant's decision was motivated by discrimination. *See Sherman*, 158 F.4th at 907–09; *see also Parker*, 129 F.4th at 1112. Plaintiff fails to do so.

Plaintiff claims that the alleged performance deficiencies concerning the cleaning of the prosthetics department, the uniform policy, the stakeholders' calendar, and productive working relationships are false. He offers no evidence, however, that Defendant's demotion decision was really motivated by discrimination. *See Sherman*, 158 F.4th at 907 ("The difficulty for Sherman is that she doesn't offer evidence that her race had anything to do with [the adverse employment actions]."); *id.* at 908 ("She resorts to speculation and bald assertions of discrimination, and so a reasonable jury could not find in her favor on this record.").

10

Neither has Plaintiff even shown that Defendant's explanations for why it demoted Plaintiff have no basis in fact. Nothing in the record indicates anything more than possible mistakes by Defendant concerning some of the alleged performance deficiencies, though even this is questionable. As to these possible mistakes, Plaintiff offers no evidence to show that his demotion was more likely due to his protected characteristics than to Defendant's stated reasons. Plaintiff's demotion may not have been the best or even the fairest employment decision, but "[t]he evidence must do more than raise doubts about the wisdom and fairness of the employer's opinions and actions—it must create a real issue as to the genuineness of the employer's perceptions and beliefs." *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1118 (8th Cir. 2018). Moreover, "[e]mployers are free to make employment decisions based upon mistaken evaluations, personal conflicts between employees, or even unsound business practices." *Edmund v. MidAmerican Energy Co.*, 299 F.3d 679, 685–86 (8th Cir. 2002). If Plaintiff has shown even this, he has certainly shown no more. And even if the Court were to consider any of Plaintiff's stricken facts that were otherwise properly supported, the Court would come to the same conclusion.

Because Plaintiff has offered no evidence connecting his demotion to discrimination based on a protected characteristic, he has failed to show pretext under *McDonnell Douglas*, and Defendant is therefore entitled to summary judgment on Plaintiff's discrimination claim.

## II. Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

Defendant argues Plaintiff's retaliation claim cannot survive summary judgment under the *McDonnell Douglas* framework. Plaintiff responds that he has satisfied *McDonnell Douglas*.

To make a prima facie case for retaliation, Plaintiff must show: "(1) [he] engaged in protected conduct; (2) a reasonable employee would have found [his] employer's retaliatory action materially adverse; and (3) the materially adverse action was causally linked to [his] protected

11

conduct." *Parker*, 129 F.4th at 1114 (citation and internal quotation marks omitted). The Eighth Circuit "generally requires more than a mere temporal connection in order to infer causation," *id.*, "and the inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months." *Warren v. Nucor Corp.*, 150 F.4th 990, 998 (8th Cir. 2025) (alteration, citation, and quotation marks omitted). "The plaintiff in a retaliation case must present sufficient evidence for a reasonable jury to conclude that her protected conduct was a determinative factor in a materially adverse employment action taken by the employer." *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008) (citations omitted).

Plaintiff's protected activity, the filing of a hostile work environment complaint, occurred on June 9, 2022. ECF No. 18-9 at 1; ECF No. 21 at ¶ 7. Plaintiff also claims he complained about sexual harassment against some of the members of his shift around the same time. ECF No. 26 at ¶ 13. An email from Auna Ricks to Plaintiff dated March 9, 2022, refers to sexual harassment, ECF No. 21-1 at 138, and an email from EEO Specialist Shakiesha James to Plaintiff dated July 5, 2022, seems to acknowledge allegations of harassment, ECF No. 21-1 at 133.

Plaintiff was promoted on July 17, 2022, not long after he engaged in protected activity. The adverse employment action at issue here, Plaintiff's demotion, was announced on June 2, 2023, and was effective July 3, 2023, roughly a year after he engaged in protected activity. On June 9, 2023, a week after the demotion letter was issued, Plaintiff contacted facility director Paula Roychaudhuri and an EEO Specialist raising issues with his work environment in EMS. On June 12, 2023, Plaintiff requested reconsideration of his demotion. This request was denied on June 26, 2023.

This sequence of events—protected activity, promotion, demotion, work environment complaint, request for reconsideration, denial of request—and the passage of nearly a year between

12

the first protected activity and the demotion could not allow a reasonable jury to infer a causal relationship between Plaintiff's protected activity and his demotion. *See Sherman*, 158 F.4th at 909 (alleged adverse action eight months after protected activity "too long to create an inference of an improper motive"; adverse action occurring before later protected activity means the later protected activity "could not have caused" the adverse employment action). Moreover, Plaintiff may not retroactively inject protected activity into his employment situation to create an inference of retaliation by raising work environment concerns after his demotion and immediately before requesting reconsideration. *See Hervey*, 527 F.3d at 723 ("The wisdom of th[e] rule [requiring more than a temporal connection between protected conduct and adverse employment action] is evident in a case such as this, where the employee was accused of insubordination *before* she notified the employer of her protected activity. Insubordinate employees may not insulate themselves from discipline by announcing an intention to claim discrimination just before the employer takes action. Evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity." (emphasis in the original) (citations omitted)). Thus, Plaintiff fails to make a prima facie case of retaliation.

And, as with his discrimination claim, even if Plaintiff had established a prima facie case of retaliation, he has not carried his burden under *McDonnell Douglas* of producing evidence of pretext. The same analysis of Defendant's proffered reasons for demoting Plaintiff in the discrimination context applies to Plaintiff's retaliation claim, and the Court will not repeat it here. And, as with the discrimination claim, even if the Court were to consider any of Plaintiff's stricken facts that were otherwise properly supported, the Court would come to the same conclusion. Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

13

**III. Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.**

Defendant argues Plaintiff's hostile work environment claim is legally insufficient under Eighth Circuit precedent.   Plaintiff argues he has satisfied the Eighth Circuit standard.

To establish a hostile work environment claim, Plaintiff must show that: "(1) [he] is a member of the class of people protected by Title VII; (2) [he] was subject to unwelcome harassment; (3) the harassment resulted from [his] membership in the protected class; and (4) the harassment was severe enough to affect the terms, conditions, or privileges of [his] employment." *Parker*, 129 F.4th at 1113 (citation modified and internal quotation marks omitted).   "In determining whether a work environment was sufficiently hostile or abusive, we examine the totality of the circumstances, including whether the discriminatory conduct was frequent and severe; whether it was physically threatening or humiliating, as opposed to merely an offensive utterance; and whether it unreasonably interfered with the employee's work performance." *Nitsche v. CEO of Osage Valley Elec. Co-op.*, 446 F.3d 841, 846 (8th Cir. 2006).   While any race or age-based "harassment in the workplace is unreasonable and may, in turn, have the effect of interfering with an employee's performance," *Parker*, 129 F.4th at 1113 (citation modified and internal quotation marks omitted), Plaintiff must present evidence sufficient for "a reasonable jury" to "find that the work environment was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *Sherman*, 158 F.4th at 910 ((citation modified and internal quotation marks omitted).   "Such standards are demanding," *id.*, for "Title VII does not impose a general civility code for the American workplace," *id.* at 907 (citation and quotation marks omitted).

Plaintiff makes allegations of both hostile work environment discrimination (42 U.S.C. §

2000e-2(a)) and hostile work environment retaliation (42 U.S.C. § 2000e-3(a)). The Eighth Circuit recognizes that, under Supreme Court precedent, "retaliation claims under Title VII [can] be based on a hostile work environment and need not be based solely on discrete adverse employment actions that affect the terms or conditions of employment." *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042 (8th Cir. 2007) (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006)). To establish a claim for hostile work environment retaliation, Plaintiff must "show [he] experienced harassment so severe or pervasive as to constitute a materially adverse action." *Mahler*, 931 F.3d at 807. The issue of severity "involves both objective and subjective components. It requires that the harassment be severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe her working conditions have been altered." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (alterations and citations omitted).

Defendant argues Plaintiff fails to establish that any harassment resulted from Plaintiff's membership in a protected class or that the harassment was severe enough to affect the terms, conditions, or privileges of Plaintiff's employment. Plaintiff argues he has presented sufficient evidence of these elements to survive summary judgment.

Plaintiff alleges a number of incidents from both before and after his promotion and demotion to support his claims for harassment. *See* ECF No. 22 at 6–8; 14–16. But Plaintiff does not show that these allegedly retaliatory actions resulted from his membership in a protected class. Viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor, Plaintiff provides no evidence that his race, color, age, or disability played any role in any of these actions. *See Woods*, 150 F.4th at 973 ("These points do not further his claim because he offers little more than speculation and conjecture the incidents had anything

15

to do with race.”); *see also Sherman*, 158 F.4th at 907.   And the only connection to his protected activity is a vague temporal connection, which, as the Court has noted, cannot, without more, support a Title VII claim.   *See Warren*, 150 F.4th at 998; *Parker*, 129 F.4th at 1114.   Moreover, Plaintiff’s allegations are unsupported, conclusory, and speculative.   This is not enough to make a prima facie claim of either discriminatory or retaliatory harassment.   *See Sherman*, 158 F.4th at 907 (“speculation and bald assertions of discrimination” not enough for reasonable jury to find for plaintiff); *Palesch*, 233 F.3d at 567, 570 (“speculation and conjecture” not enough to establish a connection between alleged mistreatment and animus; Plaintiff’s “general allegations and opinion testimony will not suffice” to make a prima facie case for retaliation).   Plaintiff does no more than “recit[e] a list of actions that [his supervisors] took against [him], and clai[m] they were taken because [of his protected characteristics].”   *Hervey*, 527 F.3d at 722 (8th Cir. 2008).   This is insufficient.

Neither do these allegations rise to the Eighth Circuit’s demanding standard for workplace harassment.   “Allegations of a few isolated or sporadic incidents will not suffice.”   *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 618 (8th Cir. 2007).   “[The conduct] must be so intimidating, offensive, or hostile that it poisoned the work environment.”   *Sherman*, 158 F.4th at 910 (citation and quotation marks omitted).   Plaintiff may subjectively believe his working conditions had altered, but the evidence Plaintiff offers does not establish that there was harassment severe or pervasive enough to create an objectively hostile or abusive work environment.   Plaintiff does not give evidence of the frequency or degree of these actions and offers no admissible evidence of physical threat or humiliation.   While the alleged lack of communication with his supervisors may have interfered with Plaintiff’s work performance, he provides no evidence to connect this lack of communication to his protected characteristics.

16

Under the totality of the circumstances, Defendant's actions do not rise to the level of a hostile work environment under Eighth Circuit law. Plaintiff has failed to make a prima facie case of hostile work environment, and even if he had, the Court has already rejected Plaintiff's arguments for pretext, and that analysis applies equally here. And, as with the other claims, even if the Court were to consider any of Plaintiff's stricken facts that were otherwise properly supported, the Court would come to the same conclusion.

Therefore, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

### Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment as to all claims, ECF No. 18, is GRANTED.

**IT IS SO ORDERED.**

Date: March 19, 2026

/s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT

17